IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO._____-CV-_____

AURA SMART AIR, INC.,                        )
                                             )
                  Plaintiff,                 )
                                             )
       vs.                                   )
                                             )
SPECOPS GROUP, INC.,                         )
SPECOPS TECHNOLOGIES, INC.,                  )
and ADRIAN GARULAY                           )
                  Defendants.                )
_____)

## COMPLAINT

Plaintiff Aura Smart Air, Inc. ("Aura"), by and through its undersigned counsel, files this Complaint against defendants SpecOps Group, Inc. ("SGI"), SpecOps Technologies, Inc. ("STI"), and Adrian Garulay (SGI, STI and Garulay, collectively, are the "Defendants") and alleges as follows:

### NATURE OF CLAIM

1. Aura brings this action against Defendants for their material breaches of the parties' commercial agreements and invoices; account stated; goods sold and delivered; unjust enrichment; alter ego; and unfair and deceptive trade practices in connection with the sale and shipment of smart air purification products.

2. Defendants have no legal excuse for their deliberate non-performance and have never disputed the validity of the agreements and invoices between them. It is unquestionable that Aura is owed no less than $1.2 million for goods that Aura delivered to Defendants, but for which Defendants never paid.

## THE PARTIES

3. Plaintiff Aura is a corporation incorporated in Delaware and headquartered in Israel. Aura Air is a smart air purification company that offers solutions that incorporate Aura Air's award winning and patented technology that filters and disinfects indoor air through a unique four-stage purification process that captures and kills 99.9% of viruses, bacteria, germs, and allergens. Aura Air's products are in use to help to purify the air in homes, hospitals, schools, businesses, hotels, restaurants, buses and nursing homes in more than 50 countries around the world.

4. Defendant SGI is a corporation that is organized pursuant to the laws of the State of Wyoming and that has its principal place of business at 2015A Cattlemen Rd. Sarasota, FL 34232. SGI, according to its website, is a "provider of advanced portable microwave radar and see through wall radar systems, thermal and passive terahertz imaging, long-range and unattended covert perimeter security systems, integrated wearable tactical computer systems, and portable explosive materials detection systems-- for enterprises, military, special operations, government, law enforcement, first-responders, search and rescue teams, ports, borders, oil terminals, high-threat facilities, and critical infrastructure all over the world."[1]

5. Defendant STI is a corporation that is organized pursuant to the laws of the State of Wyoming and that has its principal place of business in Florida at 67 Tall Trees Court, Sarasota, Florida 34232.

6. Defendant Adrian Garulay is a citizen and resident of Sarasota County, Florida. Garulay is the President and Chief Executive Officer of SGI. On information and belief, Defendant Garulay is managing principal of STI. On information and belief, Garulay is the majority or sole shareholder of SGI. On information and belief, Garulay is the majority or sole shareholder of STI.

---

[1] https://www.specopsgroup.com/about-us. Retrieved on March 11, 2022.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different States such that no plaintiff is the same citizenship as any defendant.

8. This Court has general personal jurisdiction over Garulay because he is, and was at all relevant times, a domiciliary and citizen of the State of Florida. The records of the Sarasota County Property Appraiser confirm that Garulay is co-owner of the property known as 67 Tall Trees Court, Sarasota, Florida 34232.[2] This is the same address that Garulay provided for defendant STI on the majority of the purchase orders discussed hereinafter and for correspondence with STI.

9. This Court has general personal jurisdiction over SGI because it is registered to do business in Florida and maintains its headquarters and principal place of business in Florida *and* in this judicial district.

10. This Court has general personal jurisdiction over STI because it maintains its headquarters and principal place of business in Florida *and* in this judicial district.[3]

---

[2] https://www.sc-pa.com/propertysearch/parcel/details/0045060048 retrieved on March 19, 2022.

[3] Although STI is incorporated in Wyoming, public records and STI's purchase orders demonstrate that STI's headquarters and principal place of business are in this state and not Wyoming. STI's Wyoming Secretary of State filings provide its principal address, mailing address and registered agent address as 1712 Pioneer Avenue, Cheyenne, Wyoming. This drop box address is that of Capital Administrations LLC and of its apparent parent, Wyoming Corporate Services, Inc.; the website of Wyoming Corporate Services, Inc. touts the advantages of Wyoming incorporation for "asset protection" purposes: "A Wyoming LLC formation or corporation offers its officers and directors the highest degree of protection from lawsuits filed by disgruntled creditors or overzealous plaintiff attorneys. Doing business as a Wyoming Corporation or LLC can give you advantages like asset protection and business privacy." STI's annual report lists Garulay as President at the same drop box address and despite Garulay's Florida domicile.

3

11. This Court has specific personal jurisdiction over STI under Florida's Long Arm Statute, Fla. Stat. §§ 48.193(1)(a)(1) and 48.193(1)(a)(8), because Aura's claims arise directly out of and relate to STI's own actions and conduct with Florida and purposefully directed at Florida through its transaction of business with Aura in this judicial district as part of STI's numerous purchases of products from Aura, as well as STI's breach of the contracts and failure to perform acts required by the contracts in Florida.

12. As part of STI's purchases of Aura's products, STI issued purchase orders for Aura products from the State of Florida, the majority of those purchase orders provided an address for STI that is the address of Garulay's residence – 67 Tall Trees Court, Sarasota, Florida, 34232, and indicated that all correspondence regarding the purchase orders should be directed to "Adrian Garulay, 67 Tall Trees Court, Sarasota, Florida 34232 USA, +1-774-208-2983." This telephone number is Garulay's "Direct Cell," as indicated in the signature found in Garulay's emails from his email address adrian@specops-group.com (which Garulay used in his communications with Aura).

13. Accordingly, STI purposefully availed itself of the benefits and privileges of conducting business in Florida *and* in this judicial district in connection with STI's orders of Aura's products that are the subject of this action. Accordingly, personal jurisdiction over STI is proper under principles of general jurisdiction and pursuant to Florida's Long Arm Statute and comports with due process.

14. Pursuant to 28 U.S.C. § 1391(b), venue is appropriately placed in this judicial district because Defendants reside in this judicial district, are subject to personal jurisdiction in this venue, and the events giving rise to the claims substantially occurred in this judicial district.

# FACTS

15. Aura produces and sells a line of "smart" air purification products.

16. In or about February 2021, Defendants sought out the opportunity to purchase Aura products for resale.

17. Defendants placed seven orders for Aura products during 2021, ultimately purchasing products with a total invoice value of $1,288,885.25 (One Million Two Hundred Eighty-Eight Thousand and Twenty-Five One-Hundredths Dollars), of which Defendant paid only $45,000.00 (Forty-Five Thousand Dollars).

18. Defendants' purchases from Aura generally followed this pattern: Garulay inquired of Aura regarding the pricing of Aura products, purchase orders (in one instance an email without a purchase order) were issued in the name of SGI or STI, Aura processed and shipped the orders as instructed by Defendants and issued either an order confirmation or invoice.

### *Defendants' First Purchase Order #1344*

19. On or about February 12, 2021, Garulay inquired of Aura regarding terms to purchase 10 (ten) units of SKU F00053, Aura Air System, and ten (10) units of SKU F00057, Aura Mini System.

20. On or about February 12, 2021, Garulay caused to be issued to Aura a purchase order for 10 (ten) units of SKU F00053, Aura Air System, and ten (10) units of SKU F00057, Aura Mini System, for a total purchase price of $4,110.00 (Four Thousand One Hundred Ten Dollars) ("Purchase Order #1344").

21. Purchase Order #1344 was signed and authorized by Adrian Garulay, stated that the units of Aura product were to be shipped to "Adrian Garulay, 67 Tall Trees Court, Sarasota, FL 34232," and "[b]alance to be paid 15 days after delivery of units."

22. Purchase Order #1344 bore the name of "SpecOps Group, Inc.," with an address of 2105A Cattlemen Rd., Sarasota, FL 34232. The purchase order stated "Send all correspondence to SpecOps Technologies, Inc., Attention: Adrian Garulay, 2105A Cattlemen Rd., Sarasota, FL 34232." Purchase Order #1344 provided the phone number of SGI that appears on its website: 800-652-5117.

23. Aura issued to SGH Confirmation of SOUS210323 in the total amount of $4,297.15, corresponding to the $4,110.00 purchase price stated in Purchase Order #1344 plus $187.15 for shipping export.

24. Aura shipped the goods that were the subject of Purchase Order #1344, as instructed, to Garulay's personal residence.

25. Defendants received and accepted the goods that were the subject of Purchase Order #1344 without objection.

### *Defendants Second Purchase Order 202103-02*

26. On or about March 16, 2021, Garulay inquired of Aura regarding terms to purchase 100 (one hundred) units of the Aura Air System.

27. On March 16, 2021, Garulay caused to be issued to Aura a purchase order for 100 (one hundred) units of SKU F00053, Aura Air System, for a total purchase price of $32,000.000 (Thirty-Two Thousand Dollars) ("Purchase Order #202103-02").

28. Purchase Order #202103-02 was signed and authorized by Adrian Garulay, states that "Adrian" was the requisitioner, that the 100 units were to be shipped via air shipment, FOB Singapore, and that payment terms were 50% on invoice and 50% on shipment, payments to be made "[b]y wire transfer."

29. Purchase Order #202103-02 bore the name of "SpecOps Technologies, Inc." 67 Tall Trees Court, Sarasota, Florida 34232 USA, (774) 208-2983. Purchase Order #202103-02 stated "Send all correspondence to Adrian Garulay, 67 Tall Trees Court, Sarasota, Florida 34232 USA, +1-774-208-2983."

30. Aura issued Export Invoice EIUS2180028 to STI in the total amount of $35,088.00, corresponding to the $32,000.00 purchase price stated in Purchase Order #202103-02 plus $3088.00 for shipping export.

31. Aura shipped the goods that were the subject of Purchase Order #202103-02, as instructed.

32. Defendants received and accepted the goods that were the subject of Purchase Order 202103-02 without objection.

### *Defendants Third Purchase Order 201203-01*

33. On or about March 16, 2021, Garulay inquired of Aura regarding terms to purchase 480 (four hundred eighty) units of the Aura Air System.

34. On March 16, 2021, Garulay caused to be issued to Aura a purchase order for 480 (four hundred eighty) units of SKU F00053, Aura Air System, at a total purchase price of $153,600.00 (One Hundred Fifty-Three Thousand Six Hundred Dollars) ("Purchase Order 201203-01").

35. Purchase Order 201203-01 was signed and authorized by Adrian Garulay, states that "Adrian" was the requisitioner, that the 100 units were to be shipped via twenty-foot container by sea, CIF, FOB Singapore, to Mr. John Chia, and that payment terms were 50% on invoice and 50% on shipment, payment to be made by wire transfer.

36. Purchase Order 201203-01 bore the name of "SpecOps Technologies, Inc." 67 Tall Trees Court, Sarasota, Florida 34232 USA, (774) 208-2983. The purchase order stated "Send all correspondence to Adrian Garulay, 67 Tall Trees Court, Sarasota, Florida 34232 USA, +1-774-208-2983."

37. Aura issued to STI Export Invoice EIUS2180029 in the total amount of $153,600.00.

38. Aura shipped the goods that were the subject of Purchase Order #202103-02, as instructed.

39. Defendants received and accepted the goods that were the subject of Purchase Order 201203-01 without objection.

### *Defendants Fourth Purchase Order 202145*

40. On or about April 29, 2021, Garulay inquired of Aura regarding terms to purchase 2,000 (two thousand) units of the Aura Air System.

41. On April 29, 2021, Garulay caused to be issued to Aura a purchase order for 2,000 (two thousand) units of SKU F00053, Aura Air System, at a total purchase price of $652,000.00 (Six Hundred Fifty-Two Thousand Dollars) ("Purchase Order 202145").

42. Purchase Order 202145 was signed and authorized by Adrian Garulay, states that "Adrian" was the requisitioner, that the 2,000 units were to be FOB Singapore, to Mr. John Chia, and that payment terms were 10% on invoice and "60 day payment terms on the balance starting at day of shipping," payment to be made by wire transfer.

43. Purchase Order 202145 bore the name of "SpecOps Technologies, Inc." 67 Tall Trees Court, Sarasota, Florida 34232 USA, (774) 208-2983. The purchase order stated "Send all correspondence to Adrian Garulay, 67 Tall Trees Court, Sarasota, Florida 34232 USA."

44. Aura issued to STI Export Invoice EIUS2180051 in the total amount of $669,215.00, corresponding to the $652,000.00 purchase price, plus $17,215.00 for shipping export.

45. Aura shipped the goods that were the subject of Purchase Order 202145, as instructed.

46. Defendants received and accepted the goods that were the subject of Purchase Order 202145 without objection.

*Defendants' Fifth Purchase Order 202149*

47. On or about April 29, 2021, Garulay inquired of Aura regarding terms to purchase 1000 (one thousand) units of the Aura Air System and 100 (one hundred) units of the Aura Mini.

48. On April 29, 2021, Garulay caused to be issued to Aura a purchase order for 1,000 (two thousand) units of SKU F00053, Aura Air System, and 100 (one hundred) units of SKU F00057, Aura Mini, at a total purchase price of $335,900.00 (Three Hundred Thirty-Five Thousand Nine Hundred Dollars) ("Purchase Order 202149").

49. Purchase Order 202149 was signed and authorized by Adrian Garulay, states that "Adrian" was the requisitioner, that the 1,000 units and 100 units were to be FOB New Jersey, to be shipped to SpecOps Group, Inc., 2015 Cattlemen Rd, Sarasota, FL 34232, and that payment terms were "60 day payment terms on the balance starting at day of shipping," payment to be made by wire transfer.

50. Purchase Order 202149 bore the name of "SpecOps Technologies, Inc." 67 Tall Trees Court, Sarasota, Florida 34232 USA, (774) 208-2983. The purchase order stated "Send all correspondence to Adrian Garulay, 67 Tall Trees Court, Sarasota, Florida 34232 USA."

51. Aura issued to STI Export Invoice EIUS2180050 in the total amount of $348,298.00, corresponding to the $335,900.00 purchase price, plus $12,398.00 for shipping export.

52. Aura shipped the goods that were the subject of Purchase Order 202149, as instructed.

53. Defendants received and accepted the goods that were the subject of Purchase Order 202149 without objection.

### *Defendants' Sixth Purchase Order*

54. On or about June 4, 2021, Garulay contacted Aura using the email address adrian@specops-group.com, which email bore an electronic signature "Adrian Garulay, President/CEO SpecOps Group Inc., 2015 A Cattlemen Road, Sarasota, Florida 342332" to inquire about terms to purchase 640 (six hundred forty) units of the Aura Mini.

55. In the June 4, 2021 email, Garulay specifically stated "Correction on our address 2015 A Cattlemen rd. [sic] Saraosta [sic] Fl, 34232 usa [sic] See below after my name," referring to the signature block on the June 4, 2021 email.

56. Garulay thereafter requested that Aura ship 640 (six hundred forty) units of SKU F00057, Aura Mini, at a total purchase price of $72,569.60 (Seventy-Two Thousand Five Hundred Sixty-Nine and Sixty One Hundredths Dollars).

57. Aura issued Export Invoice EIUS2180028 to SGI in the total amount of $73,151.60, corresponding to the $72,569.60 purchase price, plus $582.00 for express shipping to "SpecOps Group, Inc., 2015 A Cattlemen Road, Sarasota, FL 34232 Attn: Arian Garulay.".

58. Aura shipped the goods, 640 (six hundred forty) units of SKU F00057, Aura Mini, as instructed.

59. Defendants received and accepted the goods, 640 (six hundred forty) units of SKU F00057, Aura Mini, without objection.

### *Defendants' Seventh Purchase Order 071221*

60. On or about July 13, 2021, Garulay inquired of Aura regarding terms to purchase 99 (ninety-nine) units of Aura Air Filters.

61. On July 13, 2021, Garulay caused to be issued to Aura a purchase order for 99 (ninety-nine) units of SKU F01001-SP, at a total purchase price of $4,950.00 (Four Thousand Nine Hundred Fifty Dollars) ("Purchase Order 071221").

62. Purchase Order 071221 was signed and authorized by Adrian Garulay, states that "Adrian" was the requisitioner, and that the 99 units were to be shipped to SpecOps Group, Inc., 2015A Rd, Sarasota, FL 34232, despite the fact that the invoice was issued in the name of STI and not in the name of SGI.

63. Purchase Order 071221 bore the name of "SpecOps Technologies, Inc." Unlike the prior purchase orders, purchase order 071221 provided STI's address as 2015A Cattlemen Rd., Sarasota, Florida 34232 USA, provided the same telephone number, (774) 208-2983, that had been provided for STI and SGI interchangeably in the prior purchase orders.

64. Also unlike in STI's prior purchase orders purchase order 071221 directed all correspondence to "Adrian Garulay, +1-774-208-2983," and despite the purchase order showing that it was issued by STI, the email provided on that purchase order was Garulay's SGI (and not STI) email address: adrian@specops-group.com.

65. Aura issued Invoice INVUS111 in the total amount of $5,235.50, corresponding to the $7,281.00 purchase price, less a discount of $2,871.00, plus $285.00 for express shipping.

66. Aura shipped the goods that were the subject of Purchase Order 071221, as instructed.

67. Defendants received and accepted the goods that were the subject of Purchase Order 071221 without objection.

### *Aura is Owed $1,243,885.25 in Principal Amount.*

68. In sum, the total amount billed pursuant to the Order Confirmation and invoices EIUS 218 0028, EIUS 218 0029, EIUS 218 0051, EIUS 218 0050, EIUS 218 0059, and INVUS111 was $1,288,885.25 (One Million Two Hundred Eighty-Eight Thousand Eight Hundred Eighty-Five and Twenty-Five One Hundredths Dollars).

69. Payment in full on the Order Confirmation and invoices EIUS 218 0028, EIUS 218 0029, EIUS 218 0051, EIUS 218 0050, EIUS 218 0059, and INVUS111 was owed and is overdue.

70. Aura received three payments totaling $45,000.00 (Forty-Five Thousand Dollars) from defendant Garulay individually in respect of the Order Confirmation and invoices EIUS 218 0028, EIUS 218 0029, EIUS 218 0051, EIUS 218 0050, EIUS 218 0059, and INVUS111.

- On April 13, 2021, Garulay individually made a payment to Aura in the amount of $20,000.00 (Twenty Thousand Dollars).

- On April 26 2021, Garulay individually made a payment to Aura in the amount of $20,000.00 (Twenty Thousand Dollars).

- On April 26, 2021, Garulay individually made a payment to Aura in the Amount of $5,000.00 (Five Thousand Dollars).

71. The principal amount remaining due in respect of the Order Confirmation and invoices EIUS 218 0028, EIUS 218 0029, EIUS 218 0051, EIUS 218 0050, EIUS 218 0059, and INVUS111 is $1,243,885.25.

72. Defendants resold a portion of the products purchased from Aura.

73. When Defendants resold the products purchased from Aura, Garulay took the proceeds of those sales for his personal benefit.

74. On or about July 31, 2021, Aura transmitted to Garulay the statement that is attached hereto as Exhibit A (the "Statement"). The Statement asserted that the total principal amount due to Aura as of that date was $1,238,650.00. (The difference between the total amount claimed in paragraph 71 and the amount set forth in the Statement is due primarily to Aura not having shipped as of the date of the Statement the goods that were the subject of Purchase Order 071221 and INVUS111.)

75. In an email dated August 2, 2021, sent from adrian@specops-group.com and bearing the electronic signature of Adrian Garulay President/CEO SpecOps Group, Inc., Garulay acknowledged the obligation to pay Aura:

> We are in receipt of your Excel proposal. The following will outline our position on your proposal:
> - The main thing I want to establish is the fact that we will honor our purchase orders **as written** barring any acts of GOD that we cannot control like covid, etc. that affected the operation in Singapore.
> - I will make the downpayment for the container we received in Florida 10 days ago this month. We are now in process of selling it.

The email included a counterproposal – not accepted by Aura and omitted from this paragraph of the Complaint – to return Aura products that Defendants did not sell and asserted that no interest was due on overdue payment obligations. The email from Garulay continued:

> - As John indicated on the call . . . on Wednesday, John said he will get more than $350k in three weeks. He will get the funds wired to [Aura's] Bank of America account. I gave him your account number so it goes directly to you.
> - George and I discussed this in detail and we are in full agreement with our position.

13

*Summary:*
- *We will adhere to the terms of our purchase orders.*
- We will not pay interest on inventory at any time.

Emphasis added.

76. Although Defendants agreed upon the principal amount that they owed as of August 2021, they did not abide by their commitments to pay.

77. Aura, through counsel, demanded that Defendants cure their breach by letter dated December 17, 2021 (the "Demand Letter").

78. The Demand Letter was accompanied by the Order Confirmation and invoices EIUS 218 0028, EIUS 218 0029, EIUS 218 0051, EIUS 218 0050, EIUS 218 0059 (omitting only INVUS111).

79. Defendants have refused and failed to cure their breaches despite Aura's demand that they do so.

80. Notably, in a letter dated December 28, 2021, counsel for SGI claimed SGI itself had not purchased products from Aura.

81. Counsel's claim is refuted, however, by the fact that the Order Confirmation and invoice EIUS 218 0059 were addressed to SGI, purchase order #1344 was issued in the name of SGI, Garulay's order for 640 units of the Aura Mini was made from Garulay's SGI email address, and the 640 units of the Aura Mini were shipped to SGI.

82. Counsel's claim indicates Garulay engaged in business on his own account.

### FIRST CAUSE OF ACTION
### Breach of Contract
### (Against STI and SGI)

83. Aura incorporates Paragraphs 1-82 by reference, and further alleges as follows.

84. Aura entered into contracts with STI and SGI to sell to them Aura's products as specified in the purchase orders, emails, confirmations, and/or invoices.

85. The terms and conditions of the parties' agreements regarding Aura's sales were agreed to between Aura, STI, and SGI, and those terms and conditions were memorialized in the purchase orders, emails, confirmations and invoices.

86. Aura performed its obligations under the parties' agreements by shipping the Aura products as agreed.

87. STI and SGI received the Aura products that Aura shipped to them.

88. STI and SGI accepted the Aura products that Aura shipped to them.

89. STI and SGI materially breached the agreements between themselves and Aura by failing to pay for the Aura products that they contracted to purchase from Aura.

90. STI and SGI have no legal excuse for their non-performance.

91. STI and SGI refuse to cure their respective breaches despite demand.

92. Aura has suffered damages as a result of STI's and STG's breaches.

### SECOND CAUSE OF ACTION
### Account Stated
### (Against STI and SGI)

93. Aura incorporates Paragraphs 1-82 by reference, and further alleges as follows.

94. Aura, STI and SGI engaged in transactions between them consisting of Aura selling its products to STI and SGI.

95. Aura, STI and SGI engaged in these business transactions between March 12, 2021 and November 4, 2021.

96. Aura rendered to STI and SGI that Statement (Exhibit A hereto) with respect to the six transactions between them as of July 31, 2021, the date when the Statement was issued.

97. On August 2, 2021, Aura, STI and SGI agreed upon the balance that was the result of the transactions between them.

98. On August 2, 2021, Aura, STI and SGI expressly or impliedly agreed to pay the balance that was the result of the transactions between them.

99. Neither STI nor SGI disputed the Statement and implicitly agreed to the amount due.

100. STI and SGI promised to pay the balance set forth in the statement.

101. STI and SGI did not pay the amount agreed to be due.

102. Pursuant to the Statement, STI and SGI owe Aura the sum of $1,238,650 for the first six purchases from Aura.

103. Aura has been damaged.

### THIRD CAUSE OF ACTION
### GOODS SOLD AND DELIVERED
### (Against STI AND SGI)

104. Aura incorporates Paragraphs 1-82 by reference, and further alleges as follows.

105. Aura sold and delivered goods to STI and SGI.

106. The agreed price for the goods that Aura sold and delivered to STI and SGI is $1,243,885.25.

107. STI and SGI failed to pay the agreed price for the goods that Aura delivered to them.

108. Aura has been damaged.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Against Garulay)

109. Aura incorporates Paragraphs 1-82 by reference, and further alleges as follows.

110. Aura shipped its products as directed by Garulay, including to Singapore and to his personal residence, thereby conferring a benefit upon Garulay.

111. Garulay had knowledge of the benefit that Aura conferred upon him because Aura conferred that benefit pursuant to Garulay's express instructions.

112. Garulay accepted and retained the benefit, having retained the goods that Aura shipped at his direction and receiving for himself payment for those goods.

113. The circumstances make it inequitable for Garulay to retain the benefits that Aura conferred upon him without paying the value thereof.

114. Among other circumstances, as set forth in paragraphs 80-82, Garulay may have acted on his own behalf and for his own benefit in issuing purchase orders in the names of SGI and STI in order to shield himself from personal liability to pay for the goods that Aura shipped.

### FOURTH CAUSE OF ACTION
### Alter Ego
### (Against Garulay)

115. Aura incorporates Paragraphs 1-82 by reference, and further alleges as follows.

116. At all times material to this Complaint, STI and SGI were mere instrumentalities of Garulay.

117. Garulay dominated and controlled SGI and STI such that their separate identities and lacked an existence independent of Garulay.

118. The corporate form of SGI and STI were used for fraudulent or improper purposes.

119. Garulay interposed SGI and STI between himself and Aura in issuing purchase orders for business that he transacted for his personal benefit.

120. Upon information and belief STI and SGI were and are undercapitalized for the business in which they engaged.

121. STI is a sham that contracted with Aura in name only, but was in fact Garulay himself, as evidenced by Garulay's listing on purchase orders his personal residential address as the business address of STI and listing on purchase orders Garulay's direct cell phone number as the telephone number of STI.

122. Upon information and belief, STI is nothing more than a corporate name and a mail drop without employees, operations or even telephone number of its own.

123. Upon information and belief, Garulay used the corporate identity of SGI and STI so that he could place orders for Aura's goods and resell those goods to collect payment for himself personally, without paying Aura what it is owed.

124. Upon information and belief, Garulay utilized STI and SGI in order to avoid personal liability in transactions that he always intended would benefit himself rather than benefit SGI and STI.

125. Garulay diverted to himself the proceeds of sales of Aura products that, pursuant to the purchase orders and invoices, were the proceeds of sales of products that SGI and STI owned and sold.

126. It was fraudulent or improper for Garulay to run through SGI and STI business transactions that he intended would benefit himself rather than benefit SGI and STI.

127. Upon information and belief, the promises of payment that Garulay made to Aura on behalf of SGI and STI were fraudulent, in that Garulay never intended that STI or SGI would perform or fully pay Aura for the goods ordered and received from Aura.

128. Instead, when Garulay promised payment to Aura on behalf of SGI and STI in the various purchase orders and in response to the Statement, Garulay actually secretly intended that

SGI and STI would not pay for the goods ordered and received from Aura, and Garulay actually secretly intended that he would simply keep for himself the proceeds of his re-sale of Aura's goods.

129. Aura has been harmed by the fraudulent or improper use of the corporate form of SGI and STI.

### FIFTH CAUSE OF ACTION
### Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") Fla. Stat. §§ 501.201 *et seq.*
### (All Defendants)

130. Aura incorporates Paragraphs 1-82 by reference, and further alleges as follows.

131. FDUTPA applies to any act or practice occurring in the conduct of any trade or commerce, even as between purely commercial interests and entities.

132. Accordingly, business entities may sue for damages under FUDTPA.

133. SGI and STI materially breached the agreements between the parties by failing to pay for nearly 94% of the amounts agreed to be due and owing to Aura.

134. Defendants' wrongful conduct, however, goes far beyond the breaches of the agreements with Aura and also involves unfair and deceptive trade practices.

135. For example, as described above, STI and SGI resold Aura products and Garulay diverted to himself the proceeds of sales for which payment had not been made.

136. Additionally, as described above, Garulay secured Aura's forbearance and the shipment of additional Aura products without requiring payment in advance by promising a forthcoming payment of $350,000.00 (Three Hundred Fifty Thousand Dollars).

137. Defendants' conduct described above goes beyond breach of contract and also constitutes unfair and/or deceptive trade practices because the conduct is likely to mislead a person or entity acting reasonably under the circumstances to that person or entity's detriment and/or offends established public policy, is immoral, unethical, oppressive, and substantially injurious.

138. Aura has suffered and continues to suffer actual damages as a direct and proximate result of Defendants' unfair and deceptive trade practices.

139. Defendants engaged in these transactions for the purchase of Aura's products without intending to make payment for them.

140. The injury that Aura has suffered is not outweighed by any benefit to consumers or competition that Defendants' practices produce.

## CLAIM FOR RELIEF

WHEREFORE, Aura requests judgment in its favor and against Defendants as follows:

a. Aura demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38;

b. Actual, compensatory, and consequential damages in an amount to be determined at trial, but no less than $1,243,885.25;

c. Punitive damages in an amount to be determined at trial;

d. Costs and expenses of this action, including reasonable attorneys' fees, as provided under law;

e. Prejudgment and post-judgment interest to the extent permitted by law; and

f. Any further relief this Court deems just and proper.

Dated:  March 31, 2022                    Respectfully submitted,


*/s/ Michael P. De Simone*
Michael P. De Simone
Florida Bar No. 119739
michael@desimone.law
P.O. Box 31341
Palm Beach Gardens, FL 33418
(914) 419-7908

*Counsel for Plaintiff Aura Smart Air, Inc.*